(No. 22267.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS LEPOSKY *et al.*—(JOHN SCHUMACHER, Plaintiff in Error.)

*Opinion filed April 21, 1934.*

R. E. SMITH, for plaintiff in error.

OTTO KERNER, Attorney General, MARION M. HART, State's Attorney, J. J. NEIGER, and ROBERT E. HICKMAN, for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

John Schumacher, called the defendant, was convicted in the circuit court of Franklin county of murder and sentenced to the penitentiary for fourteen years. The indictment charged him and Thomas Leposky with killing Robert Young, Jr., with a knife, on or about October 1, 1932. Leposky entered a plea of guilty to the crime of manslaughter. Schumacher pleaded not guilty and was tried by a jury. He sued out a writ of error from this court and contends that the verdict is against the manifest weight of the evidence and that the trial court gave an erroneous instruction.

On the evening of October 1, 1932, the defendants, Schumacher and Leposky, attended a dance in Royalton. About 11:30 o'clock P. M. a number of people gathered in front of Unger's restaurant, which is located on the east side of Main street. The defendants were standing on the sidewalk when Robert Young and Vester Carroll came along. Schumacher, addressing Carroll, said, "I am going to whip you," and took off his coat. Leposky told Schumacher to "cut it out; Carroll don't want to fight." Schumacher and Carroll clinched and wrestled out in front of the restaurant. They were both down on the pavement and Schumacher asked that someone give him a knife. It does not appear that his request was complied with, but Carroll testified that in this fight he received a wound back of the ear, another between his shoulders and was stabbed in the arm. Roy McPhail testified he saw Carroll after the fight and that he had a cut near his ear and a stab on his shoulder-blade. During the struggle between the men, Minnie Schumacher, a sister of the defendant, came from the restaurant and started toward the combatants. Robert Young shoved her back, saying, "Minnie, get back; this is no place for a girl." She staggered back against a barber pole. The fight between Schumacher and Carroll ended. Then Schumacher approached Young and started a fight with him. Leposky joined with Schumacher against Young and the men moved south. Young was seen to fall to his knees. There was no one near enough to strike him except the defendants. When he arose he came back toward the restaurant and it was seen that he was bleeding. He was taken to Dr. Tweedy's office, where his wounds were dressed. The doctor testified he had a small cut above and back of the left ear, an abrasion on the nose and another above the left eye. The wound behind his ear was from a half to five-eighths of an inch long. Young was about the streets on the following day, Sunday. He worked in the coal mine on Monday. That night he had a chill

and Dr. Tweedy was called to see him. The patient was in a serious condition from an infection. He was afterwards taken to a hospital in Herrin. On October 7 a trephine operation was performed, during which the patient died. A portion of the skull, which was removed at the site of the wound above and behind the ear, revealed the end of a knife blade broken flush with the outer surface of the skull. Dr. Tweedy testified that the brain had been punctured by the blade and that death had resulted from an infection due to the wound.

The facts as above set forth were established beyond all reasonable doubt by the witnesses for the defendant as well as for the People. The only material contradiction comes from the defendant himself, who testified that he did not engage in any combat with the decedent, that he never stuck him or stabbed him, and that he had no knife. No witness saw a knife in the hands of anyone. It was dark where the final conflict occurred. There can be no doubt, however, that Young was stabbed by one of the defendants. He had no injury prior to the fight but immediately after it he was bleeding from the wound. The doctor did not discover the broken knife blade when he first saw Young, because it was not then visible.

Schumacher's request for a knife during the fight with Carroll showed his willingness to use one. His desire to fight was evidenced by his challenge to Carroll and his attack on Young. John Stanley, a neighbor of Schumacher and one of his friends, testified that he saw Schumacher at a pool-room about 7:30 o'clock P. M. on that day and heard him say, "There is going to be hell in Royalton to-night." Carroll, William Bowling, Lawrence Fox and William Godby, witnesses for the People, testified the defendants were engaged in the fight with Young south of Unger's restaurant. The defendant produced as witnesses William Guess and Leo Nix. The former stated he did not see Schumacher strike at Young, but it is evident from his tes-

timony that he knew they were fighting. Nix stated he saw the fight. The record conclusively shows that Schumacher was bent on mischief; that he provoked the fights with both Carroll and Young; that he threatened to use a knife on Carroll, and that when the fights were over both Carroll and Young had been stabbed.

The only instruction complained of by the defendant is People's instruction No. 7. It omitted to tell the jury that where a defendant takes the stand in his own behalf his testimony should be tested by the same rules as that of other witnesses. Even if the instruction, standing alone, were subject to that objection, the error, if any, disappears when the instruction is considered with the tenth instruction given on request of the defendant. The latter instruction advised the jury that the defendant was a competent witness in his own behalf; that the accused differs from other witnesses only in the fact he is the defendant charged with the commission of a crime; that such fact may be taken into consideration by the jury in passing upon his credibility, but' in other respects his testimony must be treated the same as that of every other witness who has testified in the case and is subject to like tests in determining the reliance to be placed upon it. The cases cited by the defendant do not support his objection. In *Sullivan* v. *People,* 114 Ill. 24, and *Hellyer* v. *People,* 186 id. 550, the jury was expressly told that it was not bound to treat the testimony of the defendant the same as it would the testimony of other witnesses. In *People* v. *Harvey,* 286 Ill. 593, it was held to be error to omit from the whole series of instructions one which states that the defendant's testimony must be tested the same as that of other witnesses. In *People* v. *Arnold,* 248 Ill. 169, an instruction was condemned because it contained an inference that the defendant's testimony was fabricated. Instructions were given in *People* v. *Harrison,* 261 Ill. 517, which are substantially the same as the seventh and tenth instructions

in this case. The court said that an instruction ought not be given which singles out the defendant, alone, from all other witnesses and calls the jury's attention to his interest or to some other circumstance which may affect his credibility, but where another instruction in the series includes the charge that the jury must apply the same tests to all witnesses, including the defendant, the instructions, when taken together, make an accurate statement of the law and no injury to the defendant can arise therefrom.

The judgment of conviction is well supported by the law and the facts, and it is affirmed.

*Judgment affirmed.*